**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NICK'S GARAGE, INC., | ) | |
| | ) | Civil Action No. |
| | ) | 5:12-cv-00777-MAD-DEP |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| PROGRESSIVE CASUALTY INSURANCE | ) | |
| COMPANY; NATIONAL CONTINENTAL | ) | |
| INSURANCE COMPANY; PROGRESSIVE | ) | |
| ADVANCED INSURANCE COMPANY; | ) | |
| PROGRESSIVE DIRECT INSURANCE | ) | |
| COMPANY; PROGRESSIVE MAX | ) | |
| INSURANCE COMPANY; PROGRESSIVE | ) | |
| NORTHERN INSURANCE COMPANY; | ) | |
| PROGRESSIVE PREFERRED INSURANCE | ) | |
| COMPANY; and PROGRESSIVE SPECIALTY | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................. 1

STATEMENT OF MATERIAL FACTS ........................................................................... 2

    I.   Legal Standard. ...................................................................................................... 2

    II.  Plaintiff's Breach of Contract Claims Should Be Dismissed. ............................. 2

          A.  Progressive fulfilled its contractual obligations to the First Party Assignors. ............... 4

              1.  Progressive's process for determining labor rate is sound. ................................... 6

              2.  Progressive is not obligated to pay for Plaintiff's overhead expenses. .................. 7

              3.  Progressive is not obligated to pay for original parts. ........................................... 8

              4.  Plaintiff's paint and materials charges are arbitrary and speculative. ................... 9

          B.  The First Party Assignors Have Suffered No Damages. .............................................. 10

    III. Plaintiff's GBL § 349 Cause of Action Is Unsupported by Fact and the Law. ............... 10

          A.  Plaintiff's Inability to Demonstrate any Deceptive or Misleading Act Is Fatal to Its GBL § 349 Claim. ................................................................................................. 11

              1.  Progressive's business practices are not deceptive. .............................................. 12

              2.  The alleged deceptive acts were fully disclosed. .................................................. 15

          B.  Plaintiff cannot show the requisite injury. ................................................................. 16

          C.  The alleged deceptive practice does not have the requisite consumer impact required for a GBL § 349 claim. ........................................................................................... 18

          D.  Plaintiff has no standing to bring GBL § 349 claims on behalf of the Assignors. ..... 20

CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l. Bank*, 57 F.3d 146 (2d Cir. 1995) ................................................................................................................. 21

*Bruston-Moira Cent. School Dist. v. Thomas Assoc.*, 91 N.Y.2d 256 (1998) .............................. 10

*City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616 , 883 N.Y.S.2d 772 (2009) ........ 10

*Cruz v. NYNEX Info. Res.,* 263 A.D.2d. 285 (1st Dep't 2000) ................................................... 19

*Deso v. CSX Transp., Inc.*, 790 F. Supp. 2d 1, 6 (N.D.N.Y. 2011) ............................................. 2

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42 (2d Cir. 2011) ........................ 2

*DiGangi v. Gov't Employers Ins. Co.*, 13-CV-5627 DLI RLM, 2014 WL 3644004 (E.D.N.Y July 22, 2014) ............................................................................................................................. 18

*Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co., Inc.*, 68 A.D.3d 1658, 893 N.Y.S.2d 414 (4th Dep't 2009) .......................................................................................................... 20

*Feld v. Apple Bank for Sav.*, 116 A.D.3d 549, 984 N.Y.S.2d 319 (1st Dist. 2014) ............... 15, 16

*Fleisher v. Phoenix Life Ins. Co.,* 858 F. Supp. 2d 290 (S.D.N.Y. 2012) ................................... 17

*Freefall Express, Inc. v Hudson Riv. Park Trust,* 16 Misc 3d 1135(A) (Sup Ct 2007) ............... 19

*Gapud v. Kaur*, No. SC9/07, 2007 WL 824113 (Nassau Cty. Dist. Ct. March 20, 2007) ............. 4

*Goshen v. Mut. Life Ins. Co. of New York,* 98 NY2d 314 (2002) .............................................. 19

*Ludl Elec. Products, Ltd. v. Wells Fargo Financial Leasing, Inc.*, 6 A.D.3d 397, 775 N.Y.S.2d 59 (2d Dep't. 2004) ................................................................................................................. 15

*M.V.B. Collision, Inc. v. Allstate Ins. Co.*, No. 07-CV-0187 (JFB)(JO), 2007 WL 2288046 (E.D.N.Y. Aug. 8, 2007) ...................................................................................................... 4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ............................................................................. 10, 11, 19, 20

*Rizzo v. Merchants & Businessmen's Mutual Ins. Co.,* 188 Misc.2d 180, 727 N.Y.S.2d 250 (App. Term, 2d Dep't. 2001) ......................................................................................................... 3

*S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996) ................. 10

*Spagnola v. Chubb Corp*, 574 F.3d 64 (2d Cir. 2000) ............................................................. 17

*State Farm Mut. Auto. Ins. Co. v. Mallela*, 175 F. Supp. 2d 401 (E.D.N.Y. 2001) ..................... 21

*Stutman v Chem. Bank*, 95 N.Y.2d 24 (2000) ........................................................................ 16

*Tasini v. AOL, Inc.*, 851 F. Supp.2d 734 (S.D.N.Y. 2012) ....................................................... 19

*Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dept. 1995) ......................... 10

**Statutes**

11 NYCRR 216.7(b)(7) ............................................................................... 12

N.Y. Comp. Codes R. & Regs tit. 11, § 216 ........................................... 3, 8

N.Y. Gen. Bus. Law § 349 ................................................................. passim

**Other Authorities**

Black's Law Dictionary, "Good Faith" (9th ed. 2009) ........................ 12

Ops. Gen. Counsel N.Y.S. Ins. Dept. No. 08-07-09 (July 16, 2008) ...................................... 3, 12

Ops. Gen. Counsel N.Y.S. Ins. Dept. No. 08-12-09 (Dec. 31, 2008) ........................................ 12

**Rules**

Federal Rule of Civil Procedure 56(c)(1) ....................................................... 2

Local Rule 7.1(a)(3) .................................................................................... 2

Defendants Progressive Casualty Insurance Company, National Continental Insurance Company, Progressive Advanced Insurance Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northern Insurance Company, Progressive Preferred Insurance Company, and Progressive Specialty Insurance Company ("Defendant" or "Progressive") submit this memorandum of law in support of their motion for summary judgment because, as a matter of law, Plaintiff Nick's Garage, Inc. ("Plaintiff") cannot prevail on its breach of contract or consumer protection N.Y. GEN. BUS. LAW ("GBL § 349" or "§ 349 claim") claims.

## INTRODUCTION

This case is the latest tactic employed in a long-running business-to-business dispute between Plaintiff, an auto body repair shop, and Progressive, an insurance company. Plaintiff is a Syracuse auto body repair shop that would like Progressive to pay it significantly more than any other repair shop in the county for repairs. The means by which Plaintiff seeks to achieve this objective is to allege Progressive breaches its policies with insureds and that Progressive's estimating practices harm consumers. In reality, Progressive and repair shops in the Syracuse area, including Plaintiff, regularly negotiate and reach agreed-upon prices for the cost of repairs. Furthermore, as is abundantly clear from discovery in this case, Progressive's practices are fair, reasoned and sound.

Plaintiff's attempts to frame the allegations in this case as consumer protection issues also fails. The facts in this case are acutely different from the unscrupulous schemes against consumers that GBL § 349 is intended to target. Rather, the allegations here concern an ordinary dispute between two businesses. Like various other industries, insurers and repair shops sometimes disagree on the costs of services; however, the parties negotiate in order to find a

resolution that allows each side to continue conducting business. The facts developed in this case simply do not fit the auspices of a successful GBL § 349 claim. For the reasons set forth below, all causes of action against Progressive should be dismissed.

**STATEMENT OF MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7.1(a)(3), Progressive's Statement of Material Facts is a separately filed document. Progressive hereby incorporates by reference all facts contained therein into this memorandum.

## I.      Legal Standard.

"Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Deso v. CSX Transp., Inc.*, 790 F. Supp. 2d 1, 6 (N.D.N.Y. 2011) (D'Agostino, J.); *see generally* FED. R. CIV. P. 56(a). "No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor." *Deso*, 790 F. Supp. 2d at 6-7. Summary judgment is warranted in the case at bar because no facts exist that would permit Plaintiff to prevail at trial on its breach of contract or GBL § 349 claims.

## II.     Plaintiff's Breach of Contract Claims Should Be Dismissed.

Under New York law, "to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). Plaintiff brings its breach of contract claims on behalf of 26 First Party Assignors that Progressive insured during the relevant time period. Plaintiff alleges that Progressive breached

its contracts with the First Party Assignors because Progressive failed to pay every repair line item and the high labor rate demanded by Plaintiff. These claims should be dismissed, as a matter of law, because: (1) Progressive fulfilled its contractual obligations to return the First Party Assignors' vehicles back to pre-loss condition; and (2) the First Party Assignors did not suffer any damages.

New York's Unfair Claims Settlement Practices and Claim Cost Control Measures, ("Regulation 64") governs Progressive's claim handling practices in this state. N.Y. COMP. CODES R. & REGS tit. 11, § 216 et seq. Pursuant to Regulation 64, Progressive must negotiate in good faith, with the basic goal of promptly arriving at an agreed price with the insured or the insured's designated representative. *Id.* at 216.7(b)(7). The insurer must make a good faith offer of settlement sufficient to repair the vehicle to its condition immediately prior to the loss. *Id.* at 216.7(b)(1).

Progressive, however, is not obligated to pay for any repair costs that exceed the amount of its good faith offer. OPS. GEN. COUNSEL N.Y.S. INS. DEPT. NO. 08-07-09 (July 16, 2008) (citing an April 16, 2002 opinion letter).[1] Furthermore, Progressive is not obligated to move from its initial position in a negotiation, and an insurer is not required to alter its initial negotiating position on labor rates, or any other negotiable issue, provided that its position is taken in good faith. OPS. GEN. COUNSEL N.Y.S. INS. DEPT. NO. 08-12-09 (Dec. 31, 2008).[2] Because Progressive negotiated in good faith, it is Plaintiff's burden to show they are owed the damages they seek. *Rizzo v. Merchants & Businessmen's Mut. Ins. Co.,* 188 Misc.2d 180, 183, 727 N.Y.S.2d 250, 252 (2d Dep't. 2001) (holding that when the parties cannot reach an agreed

---

[1] *Available at* http://www.dfs.ny.gov/insurance/ogco2008/rg080709.htm.
[2] *Available at* http://www.dfs.ny.gov/insurance/ogco2008/rg081209.htm.

price, the insured bears the burden of establishing the reasonable cost of the repairs necessary to restore the vehicle to its condition prior to the loss); *Accord, M.V.B. Collision, Inc. v. Allstate Ins. Co.*, No. 07-CV-0187 (JFB)(JO), 2007 WL 2288046, *2 (E.D.N.Y. Aug. 8, 2007) (following *Rizzo*, holding that the insured bears the burden of establishing the reasonable cost of repairs); *Gapud v. Kaur*, No. SC9/07, 2007 WL 824113, at *2 (Nassau Cty. Dist. Ct. March 20, 2007) (same).

**A.      Progressive fulfilled its contractual obligations to the First Party Assignors.**

Because Progressive paid a reasonable amount to repair the First Party Assignors' vehicles back to pre-loss condition, Plaintiff cannot show that Progressive breached any contractual obligations.  Notably, Plaintiff does not allege that Progressive failed to repair the Assignors' vehicles back to pre-loss condition; rather, Plaintiff alleges that Progressive failed to sufficiently compensate Plaintiff for the repair work.  Progressive's policy in New York State (the "Policy") governs its contractual obligations to the First Party Assignors.  The Policy states:

> A.  LIMITS OF LIABILITY
> 1.  The limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of: . . .
>     c.   the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible . . .
> 2.  Payments for loss to a covered auto, non-owned auto, or custom parts or equipment are subject to the following provisions: . . .
>     d.   In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by us:
>         (i)       will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by us; and
>         (ii)      will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:
>             (a)   original manufacturer parts or equipment; and
>             (b)   nonoriginal manufacturer parts or equipment.

SOF ¶¶ 11-12, Kochis Decl. Ex. "B".  Importantly, Progressive's Policy specifically states that Progressive will not pay labor rates above the prevailing competitive labor rate, as reasonably determined by Progressive.  *Id.*  In addition, the Policy states that, in determining the amount necessary to repair damaged property, Progressive's payment will be based on the cost of reconditioned, remanufactured and non-original manufacturer parts or equipment.  *Id.*  Any labor costs above the prevailing competitive rate and costs for original manufacturer parts above what Progressive estimated are the responsibility of the First Party Assignors to pay.  *Id.*

Moreover, the Policy also takes into consideration that there may be a dispute relating to the amount necessary to restore the vehicle.  Rather than dictate that Progressive's estimate controls, First Party Assignors can utilize an appraisal process wherein if the parties cannot agree on the amount of a loss, either side may demand an appraisal of the loss.  SOF ¶ 12. Within 30 days of any demand for an appraisal, each party appoints a competent and impartial appraiser to determine the amount of loss.   *Id.*  If the appraisers do not agree on the amount of loss, an umpire selected by a Court can arbitrate between the mediators.  *Id.*  The appraisal option is yet another example of Progressive's good faith efforts to restore the customer's vehicle back to pre loss condition.

Generally, Plaintiff's breach of contract claims can be categorized into four main areas: (1) auto body labor rates; (2) parts; (3) overhead expenses; and (4) paint and materials charges. As detailed below, Plaintiff's claims relating to these areas of deficiencies are specious, at best. Because Plaintiff cannot demonstrate that Progressive did anything but pay the amount necessary to restore the First Party Assignors' vehicles to pre-loss condition pursuant to the terms of its contractual obligations to the First Party Assignors, Plaintiff's breach of contract claims should be dismissed.

**1.      Progressive's process for determining labor rate is sound.**

Plaintiff's breach of contract claims primarily stem from its demand that Progressive pay an arbitrarily body labor rate in the amount of $68 to $75 per hour for the standard repairs of the First Party Assignors' vehicles.  SOF ¶ 31. While it is unclear how Plaintiff determined this was the proper amount to charge to repair the First Party Assignors' vehicles, it is known that Plaintiff has never conducted a labor rate survey and does not monitor what other auto body shops in the area charge for body labor.  SOF ¶ 34.  Furthermore, Plaintiff provides "regular" non-insured customers with discounts and sometimes charges them a flat, rather than an hourly labor rate, which likely results in large hourly labor rate discounts.  SOF ¶ 35.  Implicit in this system is Plaintiff's acknowledgement that the rate it charges insurers is higher than the rates non-insurer customers pay.

In contrast, Progressive monitors its labor rate constantly, on an estimate-by-estimate basis.  SOF ¶ 28.   In addition, it conducts a labor rate review when its appraisers, or Managed Repair Representatives ("MRRs"), are having difficulty reaching agreed prices in a geographic area.  SOF ¶ 29.  To conduct the labor rate review, Progressive will obtain proof from shops of the rates that the shops are accepting within the region.  SOF ¶ 30.  Progressive also reviews subrogation information and industry data from outside vendors as part of its labor rate review process.  SOF ¶ 31.  Using this process, Progressive determined that the amount it generally pays for standard auto body collision body repair work in the Syracuse area is $46 an hour.  SOF ¶ 32; Labor Rate Reference Guide, Labor Rate Increase Request at 2, SOF ¶¶ 28, 31.

Ironically, the findings of Plaintiff's survey expert Abacus Associates demonstrate that Plaintiff's auto body labor rates are well above-market.  Plaintiff charged an auto body labor rate of $68 - $75 per hour for repairs on the Assignors' vehicles, and currently charge customers a

labor rate of $82 - $125.  SOF ¶ 33.  Abacus determined that the average "posted" auto body labor rate for collision repair shops in Onondaga County is approximately $51.77 per hour, which is well below Plaintiff's posted labor rates.  SOF ¶ 38; Abacus Report (Oct. 7, 2013), SOF ¶¶ 37-38.  Notably, thirty-three percent of the body shops surveyed had a "posted" rate under $50.  SOF ¶ 39. Furthermore, Abacus's report acknowledges that shops do not always collect their "posted" labor rates.  For example, with respect to mechanical shops, 5% of the shops surveyed by Abacus stated that they did not receive their "posted" labor rate for mechanical repairs, but, on average, were paid $12.77 less than their "posted" labor rate.  SOF ¶ 40.

As Progressive's process for determining the prevailing market labor rate in a geographic area is reasonable, the labor rate amount paid to the First Party Assignors under the terms of their Policy is sufficient and all Plaintiff's breach of contract claims relating to labor rate should be dismissed.

### 2.      Progressive is not obligated to pay for Plaintiff's overhead expenses.

Plaintiff's breach of contract claims are riddled with charges that are extraneous and unnecessary to repair the First Party Assignors' vehicles to their pre-loss condition.  These items include overhead charges that are completely unrelated to the actual repair of motor vehicles.  For example, Plaintiff's breach of contract claims seek payment from Progressive for fax and photocopy fees.  SOF ¶ 58.  Plaintiff also seeks payment for "energy surcharges" ranging from $20.00 to $33.25 per repair for numerous First Party Assignors.  SOF ¶ 54.  Plaintiff's appraiser added these overhead "energy surcharges" purely based on Plaintiff's owner Michael Orso instructions without any understanding of why these fees were being imposed.  SOF ¶ 55.

In addition, Plaintiff charged the Assignors for ALLDATA, an electronic database that contains repair information.  SOF ¶ 60.  Plaintiff not only charges to pull information from

ALLDATA, but for the time it takes the shop to print the information.  SOF ¶ 61.  These ALLDATA charges are hardly minimal; for example, Plaintiff charged $77.40 for ALLDATA access and printing in connection with Assignor Irwin Birnbaum's claim.  *Id*.  These overhead charges are even more dubious given that the ALLDATA information can be, and is, used on multiple repairs.  SOF ¶ 62.

Progressive is not obligated under its Policy with the First Party Assignors to pay Plaintiff's overhead expenses.[3]  SOF ¶ 63.   Incredulously, while Plaintiff charges overhead expenses to Progressive, it provides concessions to non-insurance paying customers.  SOF ¶ 62.  Because these expenses are not necessary to repair vehicles back to their pre-loss condition and are not covered under the Policy, all of Plaintiff's claims relating to overhead expenses should be dismissed.

### 3.     Progressive is not obligated to pay for original parts.

New York State law and the First Party Assignors' Policies permit Progressive to pay for parts that are original or non-original, and new or used.  *See e.g.* N.Y. COMP. CODES R. & REGS TIT. 11, § 216.7  (establishing regulations for certain OEM parts in repairs); SOF ¶¶ 11-12.  When selecting parts for Progressive's estimate for the costs necessary to repair a vehicle back to pre-loss condition, Progressive's Managed Repair Representatives do not always choose the part with the lowest price.  SOF ¶ 45.  MRRs will choose the part based on the circumstances, focusing on customer satisfaction.  For example, a MRR will choose a part that is more expensive if the lesser expensive part is out of stock because the more expensive part will allow the vehicle to be returned to the customer faster.  *Id*.

---

[3] Plaintiff attempted to justify the overhead charges to Progressive in at least one instance because, "[i]f the appraiser wasn't such a jerk he would have written the check out to us and avoided the situation."  SOF ¶ 56.

Plaintiff, on the other hand, consistently disregards Progressive's written estimate specifying the use of non-original parts by selecting costly original parts. Alarmingly, Plaintiff's testimony suggests that it may not always tell the customers that it is charging them for these expensive parts. SOF ¶ 57. Plaintiff's breach of contract claims for part price differences are based on Plaintiff's refusal to use non-original manufacturer parts amounts to hundreds of dollars. SOF ¶ 44. While Plaintiff is free to reach an agreement with the First Party Assignors regarding the use of original manufacturer parts, Progressive is not obligated to pay the difference in part price. Progressive's contractual obligations are limited to the terms of the First Party Assignors' Policy, which allow Progressive to pay for non-original manufacturer parts. SOF ¶ 11. As such, Plaintiff's breach of contract claims relating to part price differences should be dismissed.

### 4. Plaintiff's paint and materials charges are arbitrary and speculative.

Plaintiff alleges breach of contract claims relating to Progressive's alleged failure to pay Plaintiff for the full amount they demand for paint and materials. Plaintiff's claimed payment deficiencies, however, are purely based on conjuncture. In charging for paint and materials, Plaintiff does not personally calculate the number of hours it spends to paint a vehicle or the quantity of materials used. SOF ¶ 23. Progressive allots costs for paint and materials using its estimating software. *Id*. Because Plaintiff is unable to meet its burden to demonstrate that Progressive's payments for paint and materials were insufficient to repair the First Party Assignors' vehicle back to their pre-loss condition, its breach of contract claims should be dismissed.

## B.	The First Party Assignors Have Suffered No Damages.

In order for Plaintiff to prevail on its breach of contract claims, the First Party Assignors must have suffered injuries. Conspiciously absent from its Amended Complaint are any allegations that the First Party Assignors' vehicles were not restored to their pre-loss condition. "It has long been recognized that the theory underlying damages is to make good or replace the loss caused by the breach of contract." *Bruston-Moira Cent. School Dist. v. Thomas Assoc.*, 91 N.Y.2d 256, 261 (1998). "Damages are intended to . . . place the nonbreaching party in as good a position as it would have been had the contract been performed." *Id.* Here, because the First Party Assignors' vehicles have been repaired back to the pre-loss condition and there are no damages, dismissal of Plaintiff's breach of contract claims are warranted.

## III.	Plaintiff's GBL § 349 Cause of Action Is Unsupported by Fact and the Law.

GBL § 349, New York's consumer protection law, "is directed at wrongs against the consuming public." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24, 623 N.Y.S.2d 529, 532 (1995). "To successfully assert a claim under [GBL] § 349, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" Order at 13-14, *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, Case 5:12-cv-00777-MAD-DEP (Feb. 27, 2013) (ECF No. 22) ("MTD Order") (citing *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 883 N.Y.S.2d 772, 776 (2009)). GBL § 349 "was not intended to be a 'sword to be wielded in business-versus-business disputes . . . where the party asserting the claim is not acting in a consumer role.'" *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996); *see also Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 148, 630 N.Y.S.2d 769, 774 (2d Dept. 1995) ("GBL §§ 349-

350 should not be permitted to become an adjunct to ordinary commercial litigation, arbitrarily raising the stakes through their one-way attorney's fees provisions") (citations and internal quotation marks omitted).

Plaintiff's GBL § 349 claim should be dismissed as a matter of law because: (1) Progressive's business practices do not constitute a materially deceptive act as Progressive fully discloses its process for determining labor rates and its use of non-original manufacturer parts in its Policy, negotiates with body shops to reach agreed upon prices, and regularly monitors and evaluates the prevailing market labor rate in the Syracuse area; (2) there is no requisite injury because Progressive paid for the First Party Assignors' vehicles to be repaired to their pre-loss condition and the claimed damages are duplicative of those asserted in the First Party Assignors' breach of contract claims; and (3) the alleged deceptive practice is not consumer-oriented as the statute requires. Furthermore, the First and Third Party Assignors' assignments ("First Party Assignments" and "Third Party Assignments") are invalid and preclude Plaintiff's GBL § 349 claims.

### A. Plaintiff's Inability to Demonstrate any Deceptive or Misleading Act Is Fatal to Its GBL § 349 Claim.

The facts in this case leave no doubt that Progressive's business practices hardly constitute a deceptive practice under GBL § 349. New York's consumer protection statute limits "deceptive acts and practices" to those likely to mislead a reasonable consumer acting reasonably under the circumstances. *Oswego*, 85 N.Y.2d at 26. Here, Progressive's claims handling practices are not deceptive. Furthermore, Progressive's practices were clearly disclosed to the Assignors, therefore, no misrepresentation or omission is possible.

## 1. Progressive's business practices are not deceptive.

Auto insurers are required to negotiate "in good faith, with the basic goal of promptly arriving at an agreed price" to repair the customer's vehicle. 11 NYCRR 216.7(b)(7). Good faith negotiations are, by definition, not deceptive. *See* BLACK'S LAW DICTIONARY, "Good Faith" (9th ed. 2009) ("A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) **observance of reasonable commercial standards of fair dealing in a given trade or business**, or (4) absence of intent to defraud or to seek unconscionable advantage." (emphasis added)). Although Progressive has a duty to negotiate, it is not obligated to accept every demand made by an auto body shop. As the Superintendent of Insurance has stated, "the insurer is not obligated to pay for any repair cost that exceeds the amount of [its] good faith offer required [pursuant to statute]." OPS. GEN. COUNSEL N.Y.S. INS. DEPT. NO. 08-07-09 (July 16, 2008) (citing an April 16, 2002 opinion letter)[4]; *see also* MTD Order at 8 (quoting same); SOF ¶ 63; *see also* Policy at PROG008415, Kochis Decl. Ex. "B". ("In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by us . . . will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by us[.]"). The Superintendent has also confirmed that "[A]n insurer in a negotiation is not required to shift from its initial negotiating position on labor rates, or any other negotiable issue, so long as its initial position is taken in good faith." OPS. GEN. COUNSEL N.Y.S. INS. DEPT. NO. 08-12-09 (Dec. 31, 2008).

Progressive's business practices go well beyond the edicts of New York Law as it regularly supplements its estimates to pay for additional costs, thereby shifting from its initial

---

[4] *Available at* http://www.dfs.ny.gov/insurance/ogco2008/rg080709.htm.

negotiating position. Indeed, the record is replete with examples of Progressive's good faith negotiations in reaching an agreed upon price.[5] SOF ¶¶ 26, 46, 49, 52.

The record is bereft, however, of any evidence that Progressive failed to negotiate other than Plaintiff's self-serving statements. Corey Lee, a Progressive MRR who has written estimates in the Syracuse area for nearly ten years, testified that it is rare that he does not obtain an agreed price with a shop. SOF ¶ 47. Indeed, Plaintiff's owner, Michael Orso, even acknowledged during Plaintiff's 30(b)(6) deposition that Progressive engages with Plaintiff in negotiation. SOF ¶ 48. Furthermore, Plaintiff's estimator Larry Zaleppa admitted that his notations in the repair file that Progressive "refused to negotiate" have not always been accurate. SOF ¶ 21.

In truth, Plaintiff's actual complaint is that Progressive does not agree to pay all of its excessive charges, including charges for photocopies and faxing. *See. e.g.* SOF ¶ 58. Plaintiff and Progressive regularly negotiate after both parties complete their initial estimates. As part of the negotiation process, Progressive makes concessions in order to reach an agreed price. SOF ¶ 48. The record is replete with examples of instances where Progressive returned to Plaintiff's shop, and wrote supplements for additional repair charges Plaintiff requested. SOF ¶ 20. Plaintiff has even conceded that Progressive has previously negotiated labor time and amounts, such as repair allowances. SOF ¶ 48.

In contrast to Progressive's consumer-oriented claims practices, Plaintiff fails to negotiate in good faith and its business practices disfavor insurers. For example, if a customer is paying for a tow bill, Plaintiff will only charge the customer the cost of the tow. SOF ¶ 53. If,

---

[5] Plaintiff's estimator admits that Progressive has never conducted itself in way that was unethical or inappropriate. SOF ¶ 51.

however, an insurance company is paying the tow bill, Plaintiff marks the tow bill up 33% over its cost. *Id.* In addition, Plaintiff consistently attempts to pass through its own overhead expenses to Progressive in other ways. As discussed supra section II(A)(2), Plaintiff's suppliers are charging it for delivery costs, which Plaintiff profits from by adding energy surcharges to its estimates. SOF ¶ 54. Plaintiff's estimator professes to have no knowledge of the origin of the "energy surcharge," stating he adds the charge to every estimate on the instruction of his boss, Michael Orso. *Id.* ¶ 55.

Likewise, Progressive's policy for determining prevailing labor rates is well-reasoned and accounts for different variables. Plaintiff's claim that Progressive is deceptive in asserting that it pays the prevailing market rate are wholly unsupported. As detailed in Section II(A)(1), Progressive reviews data from several different sources, including, market data and subrogation information in ascertaining the prevailing market rates in the Syracuse are for standard auto collision repairs. SOF ¶ 31. In fact, Plaintiff's own expert's findings support that Progressive paid the prevailing market labor rate to have the Assignors' vehicles restored to pre-loss condition. *See* Section II(A)(2).

Plaintiff's allegations of deceptive or misleading actions by Progressive are inaccurate and unsupported. Progressive negotiates claims in good faith and regularly reaches agreed upon prices to repair vehicles back to their pre-loss condition in the Syracuse area. Because Plaintiff cannot show that Progressive engaged in any deceptive or misleading consumer practice, Plaintiff's GBL § 349 claim should be dismissed.[6]

---

[6] Plaintiff further asserts that Progressive misrepresented that it had other repair shops that agreed to repair each of the Assignors' vehicles to their pre-accident condition for the amount of Progressive's estimates. *See* Am. Compl. ¶ 31(Sept. 23, 2013) (ECF No. 35). Over the course of discovery, Plaintiff did not exchange any evidence to support this allegation, nor did it identify any such documents in its Rule 26 disclosure that would support. Rather, evidence clearly shows Progressive regularly reaches agreed prices with shops in the Syracuse area. SOF ¶¶ 46-47.

## 2.    The alleged deceptive acts were fully disclosed.

It is well-recognized that conduct cannot be deemed deceptive if it was "fully disclosed" and "specifically provided for" in a contract.  *See Ludl Elec. Products, Ltd. v. Wells Fargo Financial Leasing, Inc.*, 6 A.D.3d 397, 398, 775 N.Y.S.2d 59, 61 (2d Dep't. 2004) (enforcement of lease provision does not constitute deceptive business practice violating GBL § 349; *see also Feld v. Apple Bank for Sav.*, 116 A.D.3d 549, 552-53, 984 N.Y.S.2d 319, 322 (1st Dist. 2014) (allegations that defendant bank's "deposit tickets misrepresented [plaintiff's] account balances" cannot support cause of action under GBL § 349 when bank issued plaintiff a brochure advising of potential delays in the availability of deposited funds).  The alleged deceptive acts in the Amended Complaint were disclosed to Progressive's customers and therefore cannot be deceptive.

Plaintiff's Amended Complaint alleges that Progressive used improper methods in determining the prevailing market labor rate it pays and refusing to pay Plaintiff for certain original manufacturer parts.  Am. Compl. at 25-28, (Sept. 23, 2013) (ECF No. 35).  Progressive's claim practices relating to its payment for labor rates and parts, however, cannot constitute a deceptive act because they are disclosed in the Policy, which governs Progressive's obligations to its customers.  SOF ¶ 11.    Progressive's Policy states that, in determining the amount necessary to repair damaged property to its pre-loss condition, Progressive's payment "will not exceed the prevailing competitive labor rates charged the charged in the area where the property is to be repaired."  *Id.*  Further, the Policy states that Progressive will not pay more than the cost of repair or replacement parts equipment, which may be based on reconditioned, remanufactured and non-original manufacturer parts, as reasonably determined by Progressive.  *Id.*

In addition to disclosing its payment conditions in its Policy, Progressive also provided

each First and Third Party Assignor with a copy of its estimate of repair costs before repairs began on the vehicles.  SOF ¶ 20.  Furthermore, Plaintiff had customers sign assignments of rights forms before Plaintiff even completed the repairs to the Assignors' vehicles.  SOF ¶ 15.  Similarly disturbing, Plaintiff requests the Third Party Assignors sign an "Assignment of Property Damage Claim Only" form  at the start of the repair process; these forms contain the amount that Progressive alleged Progressive failed to pay.  SOF ¶ 18.

New York courts are clear that there is no deception if the alleged deceptive act has been fully disclosed.  *See Feld v. Apple Bank for Sav*, 984 N.Y.S.2d at 322.  Progressive's Policy, the disclosure of its estimates to the Assignors before repairs began, and Plaintiff's own actions demonstrate that every alleged "deceptive" act has been fully disclosed; thus, Plaintiff's § 349 claim fails because there is no deceptive act.

### B.    Plaintiff cannot show the requisite injury.

In order to sustain its GBL § 349 claim, Plaintiff must show actual injury as a result of the material deceptive act or practice.  *Stutman v Chem. Bank*, 95 N.Y.2d 24, 29 (2000).  In addition to the absence of a deceptive act, Plaintiff's GBL § 349 claims are also unsuccessful because Plaintiff's cannot demonstrate injury.  Furthermore, even if Plaintiff's could show injury, the injury is duplicative of its breach of contract claims and therefore cannot be sustained.

Here, neither the Assignors nor Plaintiff can demonstrate any harm because the Assignors' vehicles were all repaired to pre-loss condition and Progressive paid a reasonable amount to Plaintiff to repair them.  Plaintiff chose to repair the Assignors' vehicles knowing that Progressive would not pay above-market labor rates or other charges that are unnecessary to return the vehicles to their pre-loss conditions.   Plaintiff's injury claims are particularly questionable here in light of the fact that it continues to repair vehicles for Progressive's

customers.  Moreover, Progressive has secured affidavits from several Assignors that show that they did not even know that this litigation was filed.[7]  These customers also state that they were satisfied with how Progressive handled their claims and that Progressive did not deceive or mislead them in any way.  *Id.*

Furthermore, Plaintiff's GBL § 349 claim as to the First Party Assignors are duplicative. This Court has recognized that Plaintiff's GBL § 349 claim must be based on proof of injury independent of its alleged contractual losses.  *See* MTD Order at 17.   Plaintiff has indeed failed to produce any documents or elicit testimony indicating that Progressive's purported improper conduct caused any injury other than the alleged damages Plaintiff is suing for in its breach of contract causes of action.   In fact, Plaintiff, in its Amended Complaint, alleges the same monetary damages for the First Party Assignors' breach of contract claims as it does for its GBL § 349 claims.  *Compare* Am. Compl at ¶ 37 with Am. Compl. at ¶ 48, (ECF No. 35).

New York law is clear that a plaintiff cannot assert a deceptive act under GBL § 349 that is identical to the injury in its breach of contract claim.  "Although a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract."  *Spagnola v. Chubb Corp*, 574 F.3d 64 (2d Cir. 2000); *see also Fleisher v. Phoenix Life Ins. Co.,* 858 F. Supp. 2d 290, 305 (S.D.N.Y. 2012).   Recently, the District Court for the Eastern District of New York decided a case that concerned this very issue. In *DiGangi v. Gov't Employers Ins. Co*., 13-CV-5627 DLI RLM, 2014 WL 3644004 (E.D.N.Y July 22, 2014), plaintiff alleged that GEICO breached his automobile insurance policy and

---

[7] *See e.g.* Affidavit of Neil Warner, ¶¶ 5-7 (Feb. 27, 2014) (attesting to the fact that he was unaware of the lawsuit between Plaintiff and Progressive concerning his claim and was satisfied with how Progressive handled his claim); Affidavit of James Cornell, ¶¶ 4, 6-8 (Feb. 22, 2014) (attesting to same); Affidavit of Mary Spagnola, ¶¶ 4, 6-8 (Feb. 22, 2014) (attesting to same); Affidavit of Susan Heffernan, ¶¶ 4, 6-8 (Feb. 22, 2014) (attesting to same); Affidavit of Michael McGee, ¶¶ 4, 6-8 (Feb. 27, 2014) (attesting to same); Affidavit of Alex Granozio, ¶¶ 4, 6-8 (Feb. 27, 2014) (attesting to same); Affidavit of Celestine McLeod, ¶¶ 4, 6-8 (May 6, 2014) (attesting to same), SOF ¶ 64.

violated GBL § 349 by specifying allegedly inferior auto parts in its repair estimates for damaged vehicles. In support of his GBL § 349 claim, plaintiff alleged that he suffered damages in the amount of the difference between the cost of the non-OEM parts specified in his repair estimate and the cost of the comparable OEM parts. *Id.* at *7. The court dismissed Plaintiff's GBL § 349 claim finding that: "This injury is not independent of the loss caused by the alleged breach of contract; rather, it arises out of 'the exact causes and effects complained of in the . . breach claim.'" *Id.* (*citing Fleisher v. Phoenix Life Ins. Co.,* 858 F.Supp.2d at 305–06 (holding that the plaintiff failed to state a claim for damages under GBL § 349 because the alleged damages "stem[med] from the alleged breach of contract")).

Here, Plaintiff's alleged injuries for its breach of contract and GBL § 349 claims are also one in the same. Under its breach of contract cause of action, Plaintiff alleges that Progressive breached its obligation to provide sufficient payment to restore the First Party Assignors' vehicles to pre-loss condition. *See* Am. Compl. at ¶¶ 39-41 (ECF No. 35). Similarly, in its GBL § 349 claim, Plaintiff alleges that Assignors have been injured because they were not paid the full amount necessary to repair their vehicles to their pre-loss condition. The monetary damages alleged for the First Party Assignors' breach of contract and GBL § 349 claims are identical. A plain reading of the Amended Complaint demonstrates that Plaintiff is claiming the same injury for its breach of contract and GBL § 349 claims. As there is no separate injury apart from Plaintiff's breach of contract claims, Plaintiff cannot prove the "distinct injury" necessary to support the First Party Assignors' GBL § 349 claims.

As a matter of law, because there is absence of any injury caused by a materially deceptive act, or any injury at all, the First Party Assignors' GBL § 349 claims fails.

### C. The alleged deceptive practice does not have the requisite consumer impact required for a GBL § 349 claim.

GBL § 349 is a consumer-oriented statute that "provide[s] consumers with a means of redress for injuries caused by unlawfully deceptive acts and practices." *Goshen v. Mut. Life Ins. Co. of New York,* 98 NY2d 314, 323 (2002). "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Freefall Express, Inc. v Hudson Riv. Park Trust,* 16 Misc 3d 1135(A) (Sup Ct 2007). "While the statute is not precluded to disputes between businesses *per se,* it does severely limit it." *Cruz v. NYNEX Info. Res.,* 263 A.D.2d 285, 290 (1st Dep't 2000). As to consumer oriented conduct, a plaintiff must allege that the defendant's acts or practices "have a broader impact on consumers at large," and not merely involve a private dispute unique to the litigants. *Oswego,* 85 N.Y.2d at 25. Where the alleged deceptive practices occur between relatively sophisticated entities with equal bargaining power, such does not give rise to liability under GBL § 349. *Freefall Express,* 16 Misc 3d 1135(A) ( N.Y. Sup. Ct. Sept. 7, 2007).

The Court of Appeals has made clear that "[p]rivate contract disputes, unique to the parties … would not fall within the ambit of" GBL § 349. *See Oswego,* 85 N.Y.2d at 25; *see also Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 742 (S.D.N.Y. 2012) ("[c]ourts have stated consistently that unique private transactions between sophisticated business parties do not give rise to liability under [§ 349]") (citations and internal quotation marks omitted). Instead, a plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego,* 85 N.Y.2d at 25. The issue in this case, whether or not Plaintiff's repair charges are reasonable, does not impact consumers at large.

Plaintiff's allegations concerning Progressive's ability to reach an agreed price with Plaintiff to restore the Assignors' vehicles back to pre-loss condition equates to the exact type of

"private contract dispute" that the *Oswego* court deemed incompatible with GBL § 349's intended purpose. *Oswego,* 85 N.Y.2d at 25. Plaintiff has produced no evidence that Progressive routinely fails to reach agreed prices with other body shops. Plaintiff also testified that it is able to reach agreed prices with Progressive. SOF ¶ 49. This case is about nothing more than one shop's demand that an insurer accede to all of its charges, regardless of their reasonableness. Plaintiff simply cannot show that this dispute somehow implicates the focus of GBL § 349: consumers at large.

Indeed, this is a case where "the gravamen of the complaint is not consumer injury or harm to the public interest, but, rather, harm to plaintiff's business." *Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co., Inc.*, 68 A.D.3d 1658, 893 N.Y.S.2d 414 (4th Dep't 2009) (dismissing defendant's GBL § 349 counterclaims). Plaintiff's claims should be barred as they constitute unique private transactions between sophisticated business parties that do not give rise to liability under GBL § 349. *See Oswego,* 85 N.Y.2d at 25. Because the alleged deceptive acts do not meet GBL § 349's consumer impact requirement, Plaintiff's GBL § 349 claim fails.

> **D.    Plaintiff has no standing to bring GBL § 349 claims on behalf of the Assignors.**

Plaintiff's GBL § 349 claim also fails because its assignments do not give Plaintiff standing to bring GBL § 349 claims against Progressive. Although Plaintiff has the Third Party Assignors sign two distinct assignments and the First Party Assignors sign one assignment before repairs are even complete, the assignments do not provide Plaintiff standing to bring GBL § 349 claims.

First, Plaintiff's Third Party Assignments do not give Plaintiff standing to sue Progressive. Plaintiff's assignment titled "Assignment of Property Damage Claim Only" assigns Plaintiff the right to bring claims against Progressive's insured, not Progressive. SOF ¶ 18. In

addition, Plaintiff's duplicative "Authorization for Assignment of Claim and Proceeds" signed by Plaintiff's Third Party Assignors references insurance premium and other language demonstrating that it is intended for first party, not third party claims. *Id.* Furthermore, because the Third Party Assignors do not have the right to bring a contractual cause of action against Progressive directly, these Assignments are invalid. *See* Defs.' Reply in Supp. of Mot. to Dismiss at Part II.B, (June 22, 2012) (ECF No. 14). As such, Plaintiff has no standing to bring GBL § 349 claims on behalf of the Third Party Assignors against Progressive.

Second, Plaintiff's First and Third Party Assignments against Progressive only assign Plaintiff the right to sue for property damage relating to the Assignors' motor vehicles. *See* First and Third Party Assignments. Under New York law, an assignment of contract claims does not automatically entail the right to assert tort claims arising from that contract. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l. Bank*, 57 F.3d 146, 151 (2d Cir. 1995); see also *State Farm Mut. Auto. Ins. Co. v. Mallela*, 175 F. Supp. 2d 401, 422 (E.D.N.Y. 2001) (an assignment of contractual rights to receive payment does not automatically entail the right to assert claims not based on contract). The language in Plaintiff's assignments are specific and do not grant Plaintiff the right to bring a consumer protection action against Progressive. Tellingly, 8 First/Third Party Assignors did not even know that a GBL § 349 action had been filed and have made sworn statements that are at odds with Plaintiff's GBL § 349 claim. *Id.* Because Plaintiff's Assignments do not give Plaintiff the right to bring a GBL § 349 claim against Progressive, Plaintiff has no standing and its GBL § 349 claim should be dismissed.

Finally, Plaintiff cannot rely on the assignments to assert a GBL § 349 claim because the Assignments specifically identify "Nick Orso's Body Shop & Service Center" as the Assignor. This case has been brought by "Nick's Garage, Inc." Significantly, in the Amended Complaint

Plaintiff makes no assertion that it does business by any other name than "Nick's Garage, Inc." As the Assignments do not provide Plaintiff the right to bring its GBL § 349 claim, this claim should be dismissed.

## CONCLUSION

After exhaustive litigation, Plaintiff has failed to present any evidence that creates a material issue of fact or law that defeats summary judgment with respect to either its breach of contract or GBL § 349 claims. Accordingly, Defendant respectfully requests that this Honorable Court grant summary judgment in favor of Defendants and against Plaintiff, and dismiss this action in its entirety.

Dated: New York, New York
       August 29, 2014

Respectfully submitted,

**NELSON BROWN & CO.**

By:      __/s/ Kymberly Kochis_____
         Michael Nelson, Esq.
         Kymberly Kochis, Esq.
         Veronica M. Wayner, Esq.
         17 State Street, 29th Floor
         New York, New York 10004
         Tel: (212) 233-0130
         Fax: (212) 233-0172
         mnelson@nelsonbrownco.com
         kkochis@nelsonbrownco.com
         vwayner@nelsonbrownco.com

         *Attorneys for Defendants Progressive Casualty Insurance Company, National Continental Insurance Company, Progressive Advanced Insurance Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northern Insurance Company, Progressive Preferred Insurance Company and Progressive Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Support of Progressive's Motion for Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for all parties registered therewith on this 29th day of August, 2014.

/s/ Kymberly Kochis